UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHANNEL TRADE FINANCE 2
SPC, a Cayman Islands
company, on behalf of and
for the accounts of TF
ARRAN2 SP and TF 2.1 SP,

        Plaintiff,

v.                                    Case No:  2:25-cv-173-JES-NPM

TESSPAY SERVICES, INC., a
Delaware       corporation,
TESSPAY  FINANCE,  INC.,  a
Delaware
corporation, and JEFF MASON,
an individual,

        Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on review of the Motion to Dismiss (Doc. #74) filed on February 24, 2026 by Defendants TessPay Services, Inc. ("TessPay Services"), TessPay Finance, Inc. ("TessPay Finance"), and Jeff Mason ("Mason") (collectively "Defendants").  Plaintiff Channel Trade Finance 2 SPC ("Channel Trade") filed a Response in Opposition on March 6, 2026.  (Doc. #80.)  For the reasons set forth below, Defendants' motion is denied.

I.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Additionally, "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" is required. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). This "more" does not translate into simply "longer", however, since the bottom line is that a "complaint is a short, plain, direct statement of allegations of fact sufficient to create a facially plausible claim for relief and sufficient to permit the formulation of an informed response." Trump v. New York Times Co., No. 8:25-CV-2487-SDM-NHA, 2025 WL 2680597, at *2 (M.D. Fla. Sept. 19, 2025).

Rule 12(b)(6) allows a defendant to seek dismissal of a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint must be "plausible" and "must be enough to raise a right to relief above the speculative level." Twombly at 555. The facts alleged in the complaint must be accepted as true and construed in a light most

favorable to plaintiff.  ECB USA, Inc. v. Savencia Cheese USA, LLC, 148 F.4th 1332, 1347 (11th Cir. 2025).  The Court uses a two-step process to resolve such a motion to dismiss: The Court first determines what must be pled for the cause of action, then determines whether the well-pleaded factual allegations plausibly suggest an entitlement to relief.  Caterpillar Fin. Services Corp. v. Venequip Mach. Sales Corp., 147 F.4th 1341, 1347 (11th Cir. 2025).[1]

## II.

The following facts are derived from the operative pleading in this case, the Second Amended Complaint (Doc. #37.)

### A. The Factoring Agreement and Conditional Guaranty

TessPay Services operates a telecommunications platform for the wholesale purchase and resale of minutes.  TessPay Finance purchases invoices generated on the platform from certain providers ("Selling Carriers") and resells them to other third-party providers ("Buying Carriers").  (Doc. #37 at ¶¶ 7-8.)

On August 22, 2022, Channel Trade, a factoring company, entered into a contract (the "Factoring Agreement") with both

---

[1] Plaintiff's statement that a motion to dismiss may only be granted if movant demonstrates beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle him to relief (Doc. #80, p. 6) relies on an outdated and incorrect standard.

TessPay Services and TessPay Finance.  Pursuant to the Factoring Agreement, Channel Trade agreed to advance capital to TessPay Finance for TessPay Finance to acquire invoices from the platform, and TessPay Finance agreed to sell certain approved invoices back to Channel Trade at a discount.  (Id. at ¶ 10.)  The purchase price for the invoices was the face value of each invoice, less a "Factoring Fee" and other adjustments as specified in Section 3.2 of the Factoring Agreement.

The funds Channel Trade used to purchase the invoices were advanced through two different portfolios: TF ARRAN2 SP ("Portfolio 1") and TF 2.1 SP ("Portfolio 2").  (Id. at ¶¶ 11-12.) Section 3.3(a) of the Factoring Agreement required TessPay Services to include on each invoice language advising the purchaser to make payments to either Portfolio 1 or Portfolio 2, as applicable.  (Id. at ¶ 15.)

In the event of default, Section 8.2 of the Factoring Agreement gave Channel Trade the right to declare all amounts owed by TessPay Finance immediately due and payable.  (Id. at ¶ 18.) Moreover, Section 3.6(a) of the Factoring Agreement (the "Limited Repurchase Obligation") required TessPay Finance to buy back uncollected invoices from Channel Trade in the following circumstances:

> > (i)     In the event of fraud by TessPay Services personnel;
> >
> > (ii)    In the event of any breach by the Seller of this Agreement or a manifest error by TessPay Services;
> >
> > (iii)   In the event that the factoring agreement between the Seller and the Selling Carrier is amended or altered without the consent of the Factor or any breach of that factoring agreement by the Seller;
> >
> > (iv)    Set-off or purported set-off by the Selling Carrier;
> >
> > (v)     Any threatened or actual attempt by the Selling Carrier to withhold payment from the Seller for reasons related to a purported or actual breach of the agreement between the Selling Carrier and the Seller.

Factoring Agreement §3.6(a).

On July 26, 2021, Mason – an officer and director of both TessPay entities – entered into a Conditional Guaranty ("Guaranty") with Channel Trade. Under the terms of the Guaranty, Mason personally guaranteed the "Guaranteed Debt," which was defined in the Guaranty as (1) Principal Obligations, including all payments owed by TessPay Finance to Channel Trade, (2) Legal Expenses, including any attorney fees incurred by Channel Trade to enforce its rights against TessPay Finance or Mason, and (3) Accrued Interest on the outstanding balance owed. (Id. at ¶ 14.) Mason's obligations under the Guaranty were triggered when funds

for which Channel Trade had an interest were used for a "fraudulent purpose," defined in Section 2 as "any use of Funds, by any director, officer, employee or associate of TessPay, for any purpose that is not approved by the Lender as per the Factoring Agreement in an intentionally fraudulent manner."  (Id. at ¶ 24.)

**B. Alleged Breaches of Factoring Agreement**

Channel Trade alleges that the following relevant events occurred over the course of its contractual relationship with the TessPay entities:

(1) Several non-party carriers stopped making payments on their invoices because TessPay Finance breached its agreements with them.  These defaults triggered Section 3.6(a) of the Factoring Agreement, which obligated TessPay Finance to repurchase those outstanding invoices from Channel Trade.  (Id. at ¶ 20.)

(2) TessPay Services personnel, including Mason, orchestrated a separate side-agreement to divert payments from specific carriers away from Channel Trade and into a different company - CPEC Tech Limited ("CPEC").  This triggered Channel Trade's right of recourse against TessPay Finance under Sections 3.6(a)(i) and 3.6(a)(ii).  (Id. at ¶ 21.)

(3) Mason and other TessPay Services personnel arranged for funds due Channel Trade to instead be paid to a different lender, Raisin Bank, to satisfy a separate debt.  (Id. at ¶ 22.)

(4) TessPay Services failed to include on its invoices the contractually required information directing payments be made to Channel Trade, causing payments that should have properly been made to Channel Trade to be diverted to other parties.  (Id. at ¶ 23.)

### III.

Channel Trade first filed suit against Defendants on March 3, 2025, asserting several breach of contract claims.  (Doc. #1.) Channel Trade has now filed a Second Amended Complaint (Doc. #37) asserting the following claims for relief:  Count I, Breach of the Factoring Agreement (as to TessPay Finance); Count II, Breach of the Factoring Agreement (as to TessPay Services); Count III, Breach of the Guaranty (as to Mason); Count IV, seeking to enforce its contractual rights to fees and costs under the Factoring Agreement (as to TessPay Finance); and Count V, seeking to enforce its contractual rights to fees and costs under the Guaranty (as to Mason).

Defendants seek to dismiss the Second Amended Complaint against each party for distinct reasons.  (Doc. #74.)  The Court will address the arguments as to each party in turn, keeping in mind that "[t]he pleading standards in the Federal Rules of Civil Procedure 'appl[y] to state-law claims litigated in federal

court.'" <u>Pop v. LuliFama.com LLC</u>, 145 F.4th 1285, 1292 (11th Cir. 2025)(citation omitted.)

### A. Count 2: TessPay Services

"A Florida breach of contract claim requires the plaintiff to establish (1) a valid contract, (2) a material breach, (3) causation, and (4) damages." <u>Perez v. Owl, Inc.</u>, 110 F.4th 1296, 1305 (11th Cir. 2024) (citing <u>Handi-Van, Inc. v. Broward County</u>, 116 So. 3d 530, 541 (Fla. 4th DCA 2013)).  Under Section 3.3(a) of the Factoring Agreement, TessPay Services was required to include specific language on all invoices directing carriers to remit payment to either Portfolio 1 or Portfolio 2.  Count 2 of the Second Amended Complaint alleges that TessPay Services breached the Factoring Agreement by (1) omitting instructions on its invoices that all funds be paid to Channel Trade, and (2) diverting payments worth $6,940,226.68 that were intended for Channel Trade to different third-party lenders to settle unrelated debts.  (Doc. #37 at pp. 6-7.)

TessPay Services asserts three reasons Count 2 should be dismissed.  TessPay Services argues that: (1) the Limited Repurchase Obligation is not enforceable against TessPay Services, only TessPay Finance; (2) Count 2 does not plausibly allege that the alleged omission of payment instructions was the proximate cause of the carriers' complete non-payment of the invoices to any

entity; and (3) since fraud claims must be pled with particularity, there is insufficient evidentiary detail alleged as to the approximately $6.9 million diverted to third parties. (Doc. #74 at pp. 10-12.)

Channel Trade responds that TessPay Services mischaracterizes its claim in Count 2. Channel Trade contends that it is not suing TessPay Services for breach of the Repurchase Agreement, but for its independent breach of its obligation to ensure the invoices clearly directed the carriers to remit payment to Channel Trade. (Doc. #80 at p. 9.) The Court agrees with Channel Trade's view of its claim, and finds that Count 2 sufficiently alleges a breach of contract.

As to causation between the failure to include the payment instructions and non-payment to Channel Trade, Channel Trade responds it has set forth sufficient factual allegations of a breach (i.e., TessPay Services' failure to include the proper payment information on the invoices) and its resulting damages (the carriers' failure to make payments to Channel Trade). (Doc. #80 at pp. 9-10.) The Second Amended Complaint also alleged that the former caused the latter. (Doc. #37 at ¶¶ 23, 36.) While Channel Trade may or may not be able to ultimately prove causation, its factual allegations are sufficient to withstand a motion to dismiss.

TessPay Services' final ground for dismissal is that Count 2 is essentially a claim for fraud, which must be pled with particularity under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  The particularity requirement of Rule 9(b) applies when plaintiff "alleg[es] fraud," which depends on the factual allegations underlying the claim, not how the claim is styled.  So long as a claim "sound[s] in fraud" based on the allegations underlying the claim, Rule 9(b)'s particularity requirement applies. Pop, 145 F.4th at 1293.

Count II is a breach of contract claim (Doc. #37 at ¶¶ 33-37).  The gist of its allegations are that

> 35. Personnel of TessPay Services arranged for funds that should have been paid to Channel to be paid to a different lender to satisfy a separate debt.

> 36. TessPay Services also failed to include the contractually-required information directing that payments should be made to Channel, as required by Section 3.3(a) of the Agreement. As a result, payments that should have properly been made to Channel were diverted elsewhere."

(Id. at ¶¶ 35, 36.)  None of its allegations sound in fraud, and therefore Rule 9(b) is not applicable.

### B. Counts 3 and 5: Mason

The Guaranty signed by Mason provides that his "guarantee obligations" do not become effective unless and until "funds advanced by the Lender [Channel Trade], or funds in which the

Lender has an interest . . . are used for a fraudulent purpose." (Doc. #37, § 1.)  A "fraudulent purpose" is defined as "any purpose that is not approved by the Lender as per the Factoring Agreement in an intentionally fraudulent manner."  (Id.)

In Counts 3 and 5 of the Second Amended Complaint, Channel Trade alleges that Mason's Guaranty obligations became effective when funds in which Channel Trade had an interest were used for a "fraudulent purpose."  Therefore, Channel Trade alleges, Mason is in breach of that Guaranty because Mason has not paid the resulting debt (Count 3) or the associated legal fees (Count 5).  (Doc. #37 at pp. 7, 8-9.)

Mason moves to dismiss Counts 3 and 5 because: (1) the Guaranty only covers TessPay Finance's indebtedness to the Lender (Channel Trade), which accounts for "only" approximately $5.2 million of its purported $14,430,601.30 damages, and (2) the Second Amended Complaint fails to sufficiently plead with particularity the facts triggering any liability under the Guaranty.  As to the second issue, Mason argues that allegations of fraud are subject to Rule 9(b)'s heightened pleading standard, but the counts fail to (a) allege any purpose for which TessPay Services or Mason permitted Buying Carriers to pay third parties, let alone a purpose that was not approved and in an intentionally fraudulent manner,

and (b) identify the invoices which are the subject of the claim. (Doc. #74 at pp. 12-14.)

As to the first issue, "[o]rdinarily, a plaintiff need only plead an amount sufficient to satisfy the amount-in-controversy requirement in good faith." Fastcase, Inc. v. Lawriter, LLC, 907 F.3d 1335, 1342 (11th Cir. 2018).  In the Amended Complaint, Channel Trade states that it "is entitled to recover from Mason its actual costs and legal fees associated with enforcing its rights under the Agreement and the Guaranty," and seeks from *all* Defendants "damages in the amount of $14,430,601.30, its attorneys' fees and costs, pre- and post-judgment interest thereon, and for such other and further relief as this Court deems proper and just."  (Doc. #37 at p. 9.)  The Court finds that Channel Trade has sufficiently pled damages.

As to the particularity issue, Channel Trade responds that Mason incorrectly treats the Guaranty as if it requires the elements of common law fraud.  Rather, Channel Trade argues, the Guaranty provides its own definition of a "fraudulent purpose": the use of such funds "for any purpose that is not approved by the Lender as per the Factoring Agreement in an intentionally fraudulent manner."  Channel Trade argues that the relevant question is whether the Second Amended Complaint plausibly alleges Mason knowingly allowed the funds to be diverted in a manner not

authorized by the Agreement, not whether the Rule 9(b) particularity requirements are satisfied.  In any event, Channel Trade argues, the Second Amended Complaint alleges sufficient facts to plead a "fraudulent purpose" and that the allegations satisfy Rule 9(b)'s particularity requirement.  (Id. at 11-12.)

Even when the elements of a claim do not perfectly overlap with the elements of fraud, the claim can nevertheless "sound in fraud" and be subject to Rule 9(b) based on the factual allegations supporting the claim.  Pop, 145 F.4th at 1294.  To the extent that Rule 9(b) may apply to these breach of contract claims, the allegations in the Second Amended Complaint satisfy Rule 9(b)'s particularity requirement.  As Channel Trade states, "[t]hey identify the individual responsible for the conduct (Mason), the transactions involved (payments owed by the carriers []), the specific amounts diverted ($3,879,184.17 and $3,061,042.51), and the entities to which those funds were diverted (CPEC and Raisin Bank)."  (Doc. #80 at p. 12 (citing Doc. #37 at ¶¶ 21-22, 25.)) Contrary to his argument (Doc. #74 at pp. 11, 13-14), Mason is not entitled to evidentiary detail such as an identification of invoices as to the breach of contract claim.

Accordingly, the motion to dismiss Counts 3 and 5 is denied.

**C. Counts I and IV: TessPay Finance**

In Counts 1 and 4 of the Amended Complaint, Channel Trade alleges that TessPay Finance is in breach of its obligations under the Factoring Agreement and seeks recovery of damages under the Limited Repurchase Obligation (Count 1) and reimbursement for fees and costs incurred in connection with TessPay Finance's purported breach (Count 4). (Doc. #37 at pp. 6, 7-8.) Among other things, the Limited Repurchase Obligation requires TessPay Finance to buy back uncollected invoices from Channel Trade "in the event of fraud by TessPay Services personnel" (Section 3.6(a)(i)), "[i]n the event of a manifest error by TessPay Services" (Section 3.6(a)(ii)), or in the event of "[a]ny threatened or actual attempt by the Selling Carrier to withhold payment from the Seller for reasons related to a purported or actual breach of the agreement between the Selling Carrier and the Seller." (Section 3.6(a)(v)).

TessPay Finance argues that the Second Amended Complaint fails to state a claim for relief because it fails to sufficiently allege facts triggering TessPay Finance's Limited Repurchase Obligation. Specifically, TessPay Finance contends that the claims under Section 3.6(a) fail because: (1) nonpayment by carriers under Section 3.6(a)(ii) is not plausibly alleged since such defaults may simply reflect the credit risk Channel Trade assumed by contract; (2) the Section 3.6(a)(i) claim is

-14-

insufficiently pled because the underlying fraud allegations lack the requisite particularity pursuant to Rule 9(b); and (3) Section 3.6(a)(v) is inapplicable because that provision is triggered by the actions of a "Selling Carrier" rather than a "Buying Carrier," thus Channel Trade's vague allegations that "[c]ertain carriers" failed to make payments is insufficient to trigger this provision. (Doc. #74 at pp. 14-16.)

The Court finds that the Second Amended Complaint sets forth sufficient facts to trigger the Limited Repurchase Obligation under Section 3.6(a)(ii) of the Factoring Agreement. Channel Trade alleges that TessPay Services failed to include information on its invoices directing that payment be made to either of two portfolios and that TessPay Services personnel arranged for payments owed to Channel Trade be diverted to other lenders. (Doc. #37 at ¶¶ 35, 36.) The Court further finds that the Second Amended Complaint sets forth with sufficient particularity the requisite underlying fraud allegations to trigger the repurchase obligation for the same reasons the Court found the fraud allegations in Counts III and V sufficiently pled. (See Doc. #37 at ¶¶ 21-23.)

Finally, insofar as Channel Trade seeks to invoke the Limited Repurchase Obligation pursuant to Section 3.6(a)(v) of the Factoring Agreement, the Court finds sufficient allegations in the Amended Complaint to satisfy Rule 8(a)'s notice pleading

-15-

requirement.    The Amended Complaint alleges that (1) TessPay Finance breached contracts with certain carriers, and (2) as a result, those carriers ceased making payments to Channel Trade. (Doc. #37 at ¶ 20.)  Accepting these factual allegations as true, as the Court is required to do at this stage in the proceedings, there is enough in the Amended Complaint to make the claim "plausible on its face."  Twombly, 550 U.S. at 570.  Therefore, the Motion to Dismiss will be denied as to Counts 1 and 4 of the Amended Complaint.

Accordingly, it is now

**ORDERED:**

Defendants Motion to Dismiss (Doc. #74) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this   18th   day of May 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record

-16-